IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL RAILROAD PASSENGER CORPORATION** 60 Massachusetts Avenue, NE Washington, DC 20002 | * * * | |
| and | * | |
| **WASHINGTON TERMINAL COMPANY** 60 Massachusetts Avenue, NE Washington, DC 20002 | * * | Civil Action No. |
| Plaintiffs, | * | |
| v. | * | |
| **CASCO SECOND STREET, LLC** 1701 Rockville Pike, Suite B-20 Rockville, MD 20852 | * * | |
| Agent for Service, Inc. 1100 New York Avenue, NW, West Tower, Suite 500 Washington, DC 20005 **Registered Agent for Defendant CASCO Second Street, LLC** | * * * * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiffs, National Railroad Passenger Corporation ("Amtrak") and its subsidiary, Washington Terminal Company ("WTC," hereinafter collectively "Amtrak" or "Plaintiffs"), by their undersigned attorneys, hereby bring this Complaint for Breach of Contract, for Declaratory Judgment and, in the alternative, for equitable relief, against Defendant CASCO Second Street, LLC ("CASCO" or "Defendant"), and in support thereof state as follows:

## PARTIES

1. Amtrak is a District of Columbia corporation established by Congress in 1971. *See* 49 U.S.C. § 24101 *et seq.* Amtrak's principal place of business is located at 60 Massachusetts Avenue, NE, Washington, DC 20002. More than fifty percent of Amtrak's capital stock is owned by the federal government.

2. Washington Terminal Company is a wholly-owned subsidiary of Amtrak organized under the laws of the District of Columbia. WTC's principal place of business is 60 Massachusetts Avenue, NE, Washington, DC 20002.

3. CASCO is a Maryland limited liability company with a principal place of business of 1701 Rockville Pike, Suite B-20, Rockville, Maryland 20852.

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. The Plaintiffs are corporations incorporated under the laws of the District of Columbia with their principal places of business in the District of Columbia. The Defendant is a corporation incorporated under the laws of the State of Maryland with its principal place of business in Maryland. The amount in controversy, without interests and costs, excess the sum or value specified by 28 U.S.C. §1332.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1349 because a majority of Amtrak's stock is owned by the United States.

## VENUE

6. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

## FACTS COMMON TO ALL CLAIMS

7. REA Associates LLC ("REA"), a District of Columbia limited liability company not a party to the instant action or to the events forming the basis of this action, was at the time relevant to the agreements set forth herein, the owner of certain real property located at 900 2nd Street, NE, Washington, DC (the "Substation Property").[1]

8. Defendant CASCO is the current owner of air rights positioned 61 feet, more or less, above the Substation Property (the "Substation Property Air Rights").

9. Both the Substation Property and the Substation Property Air Rights are subject to a certain easement ("Substation Easement") set forth in deeds recorded among the land records of the District of Columbia as Instrument Nos. 8100039354 and 8500012375.

10. Substation 25A ("Existing Substation"), which is part of the system that supplies electric power to Amtrak for the operation of passenger trains on the Northeast Corridor and to Union Station, is located within the Substation Easement.

11. The Substation Easement requires WTC to relocate the Existing Substation (the "Substitute Substation"), for the benefit of CASCO, and only upon "written request if required because of a development plan approved by the appropriate agencies of the District Government upon the area encumbered by such easement," and with certain cost sharing arrangements, to another part of the Substation Property ("Substitute Property").

12. Pursuant to a grant contained within the provisions of a certain easement by and between REA and CASCO dated December 14, 1998, which is recorded among the land records of the District of Columbia as Instrument No. 9800096037 and re-recorded as Instrument No.

---

[1] The Substation Property is presently owned by Flourine, LLC.

9900051071, CASCO was granted full authority to exercise REA's rights as owner of the Substation Property with regard to the relocation of the Existing Substation.

13. On or about September 2, 2009, Amtrak/WTC and CASCO entered into a Relocation Agreement ("Agreement").[2] *See* RELOCATION AGREEMENT, attached as **Exhibit 1**.

14. The Agreement was executed under "seal". **Exhibit 1,** at 16-17.

15. The Agreement provides that it shall be governed by the laws of the District of Columbia. **Exhibit 1,** at 14, ¶ 9.

16. The Agreement provides that WTC is a subsidiary of the National Railroad Passenger Corporation (Amtrak) and throughout the agreement the term Amtrak/WTC is used in order to refer to either WTC or Amtrak because the Agreement gave Amtrak the right to "determine which entity is appropriate to execute the responsibilities assigned to Amtrak/WTC under this Agreement." **Exhibit 1,** at 1.

17. The Agreement acknowledges certain relocation costs would be incurred in designing and constructing the Substitute Substation on the Substitute Property ("Substitute Substation Costs"). **Exhibit 1,** at 3, ¶ 1.c.

18. WTC and CASCO agreed that the Substitute Substation Costs would include at a minimum:

> Designing, engineering, zoning, permitting, obtaining environmental assessments or environmental impact statements if required, bidding, normal grading and preparing the land for the Substitute Substation construction, building the Substitute Substation, insurance and connecting the Substitute Substation to the electric grid serving Union Station and the [Northeast Corridor], providing construction management, inspecting the work done to make sure that it performs as designed, closing, demolishing and removing the above ground components of the Existing Substation and associated utility lines.

---

[2] For the sake of clarity and consistency, all of the defined terms in this Complaint have the same definitions as the defined terms in the Agreement.

**Exhibit 1,** at 3-4, ¶ 1.c(i).

19. WTC and CASCO agreed that the Substitute Substation Costs would be "shared[ed] equally[.]" **Exhibit 1,** at 3-4, ¶ 1.c(i); *id.* at 5, ¶ 2.b.

20. As contemplated by the sequence of events described in the Agreement, only planning activities have occurred to date, and those plans were suspended at the 90% design stag due to CASCO's non-payment.

21. The Agreement requires sharing of those planning costs, incurred as a result of the planning activities described in Paragraph 18, as follows:

> CASCO and WTC shall each pay half of (i) all pre-development Substitute Substation Costs, including the costs of designing and bidding the Substitute Substation ("Pre-Development Costs") including costs incurred under a design contract with the Design Consultant ("Design Contract") . . . on a *pari passu* basis upon receipt of a certified payment application.

**Exhibit 1,** at 5, ¶ 2.b.

22. The Agreement further provides:

> If either party incurs a cost or is obligated to make a payment to the other party under the Design Contract, the Construction Contract or otherwise to which the other party is obligated to contribute under this Agreement, the party incurring the costs will send the bill to the other party, supported by a certified payment application in the case of third party contract requisitions and by appropriate invoices otherwise, and the other party will pay the bill within thirty-five (35) calendar days after receipt of the bill. Any payment from one party to the other not paid within thirty-five (35) calendar days of the date billed and due shall accrue interest at the rate of 1% per month.

**Exhibit 1,** at 5-6, ¶2.c.

23. The Agreement further provides that "[t]he prevailing party in an action to enforce the terms of this Agreement shall be entitled to reimbursement of reasonable attorney's fees and costs." **Exhibit 1,** at 14, ¶ 10.

24. To date, Plaintiffs have incurred approximately $885,030.70 in Substitute Substation Costs.

25. Pursuant to the *pari passu* cost-sharing provisions of the Agreement set forth above, Plaintiffs have duly invoiced CASCO in the amount of $442,515.35.

26. CASCO has paid none of its obligations under the Agreement toward the total sum of $885,030.70 of planning costs that Amtrak has incurred for the benefit of CASCO.

27. Any and all conditions precedent to bringing this action have been satisfied.

## COUNT I

### (Breach of Contract)

28. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 27 above as if set forth fully herein.

29. The Agreement is a valid contract between the parties.

30. The Agreement imposes on CASCO an obligation to share equally in all Substitute Substation Costs incurred pursuant to terms of the Agreement.

31. Plaintiffs have incurred Substitute Substation Costs in the amount of $885,030.70 to date.

32. CASCO is obligated to pay Plaintiffs $442,515.35, plus interest, in Substitute Substation Costs pursuant to the *pari passu* cost-sharing provisions of the Agreement set forth above, but has refused to do so, therefore CASCO has committed a material breach of the Agreement.

33. Plaintiffs have suffered damages as a result of having paid $885,030.70 in Substitute Substation Costs to third parties without CASCO having paid Plaintiffs its equal share of those incurred Substitute Substation Costs.

34. Plaintiffs demand judgment against Defendant for its breach of contract as stated in Plaintiffs' Prayer for Relief.

## COUNT II

### (Declaratory Judgment)

35. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 34 above as if set forth fully herein.

36. Plaintiffs contend that they have incurred Substitute Substation Costs in excess of the amount of $885,030.70, and that CASCO is obligated to pay Plaintiffs $442,515.35 (plus costs, expenses and interest) a pursuant to the *pari passu* cost-sharing provisions of the Agreement set forth above.

37. CASCO has denied in written communications that it owes Plaintiffs $442,515.35.

38. Because CASCO has failed to pay the amount due, CASCO has breached its duty and is in default under the Agreement.

39. CASCO's refusal to pay the amounts due is a material breach of the Agreement, constitutes a repudiation that terminates the Agreement, and Amtrak has informed CASCO, by the filing of this action and otherwise, that it considers the Agreement to be terminated by CASCO's material breach.

40. Because of the termination of the Agreement, the terms of the original Substation Easement remains in effect.

41. An actual controversy has arisen between the parties regarding CASCO's obligations under the Agreement.

42. The controversy is of sufficient immediacy and importance to warrant declaratory relief.

43. Plaintiffs are entitled to entry of declaratory judgment in favor of Plaintiffs as stated in Plaintiffs' Prayer for Relief.

## COUNT III

### (Unjust Enrichment)

44. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 42 above as if set forth fully herein.

45. CASCO owes $442,515.35 to Plaintiffs pursuant to the terms of the Agreement, plus interests, costs, and reasonable attorneys' fees incurred in this action to enforce the terms of the Agreement.

46. CASCO has wrongfully benefitted as a result of its unlawful retention of money owed to Plaintiffs for work paid for by Plaintiffs under the terms of the Agreement.

47. Despite repeated demands spanning several years, CASCO has refused to pay any portion of the sum owed to Plaintiffs under the terms of the Agreement.

48. It would offend principles of equity and good conscience to permit CASCO to retain the $442,515.35 when it is fully aware that such sum is owed to Plaintiffs to compensate Plaintiffs for one-half of the "pre-development Substitute Substation Costs" incurred by the parties pursuant to the terms of the Agreement.

49. As a result of CASCO's unjust enrichment from its unlawful refusal to satisfy its obligations under the Agreement, Plaintiffs have suffered damages in the amount of $442,515.35 plus interest, and incurred attorneys' fees and costs to enforce the Agreement.

50. Plaintiffs demand judgment against Defendant for its unjust enrichment as stated in Plaintiffs' Prayer for Relief.

### PRAYER FOR RELIEF

WHEREFORE, Amtrak requests that this Honorable Court enter an order and judgment in Amtrak's favor and against CASCO Second Street, LLC:

1.  Determining that CASCO is obligated to pay Plaintiffs in the amount of $442,515.35 pursuant to the terms of the Agreement, plus reasonable attorney's fees, costs, and interest as authorized in the Agreement;

2.  Determining that CASCO breached the terms of the Agreement and because CASCO breached the Agreement, the Agreement is terminated, no longer in force or effect and the original terms of the Substation Easement are in force and effect; and

3.  Awarding Amtrak full compensatory damages on its claims against CASCO in the amount of $442,515.35;

4.  Awarding Amtrak pre- and post- judgment interest on the damages awarded;

5.  Awarding Amtrak the costs and expenses of suit and attorneys' fees;

6.  Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

COUNSEL FOR PLAINTIFFS NATIONAL RAILROAD PASSENGER CORPORATION AND WASHINGTON TERMINAL COMPANY

*/s/ Dennis M. Moore*
Dennis M. Moore
DC Bar No. 303396
Deputy General Counsel and Solicitor General
NATIONAL RAILROAD PASSENGER CORPORATION
60 Massachusetts Ave. NE
Washington, DC 20002
Telephone: 202-906-2750
Fax: 202-906-2821
udma@amtrak.com

_____
Drake Zaharris
Federal Bar ID: 385906
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
Telephone: 410-938-8800
Fax: 410-832-5650
dzaharris@pklaw.com


OF COUNSEL FOR PLAINTIFFS NATIONAL RAILROAD PASSENGER CORPORATION AND WASHINGTON TERMINAL COMPANY, PENDING ADMISSION *PRO HAC VICE*


_____
Patricia McHugh Lambert
James Benjamin
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
Telephone: 410-938-8800
Fax: 410-832-5653
plambert@pklaw.com
jbenjamin@pklaw.com

1302274.1